r-uasow, C. -i.
i <i 5B5.1 i i i mill and ion. acres of land wero sold by order of the C-art of P.pfohy and bought by John B. Fogle:n;iu, r!r; p/m; of J7C3, for which he gave !ue no'..'; with lí-'.r.y Foghv.nno :vui ofurs as sureties.
¡hi 185-1 the let o" n’’!-; a- ‘rCV:sr v/sa sold by order of tho Court of E-jcdiy, f-r’d by John B. Fo,;,'c •: tn at tho price of $-55, for .P.V.h ho gy/o’us n to with ihry Fir glofoon and otV so• ;vi ''''..’"for.
in 1357 jndg'-'u r h for hi the name oft e '.lloví, and Muster on tho no:-:'of §‘í')ít> cví iVc '• i rur.'d a,cfo th-_> mill and asxictooa acres of food vn sd % c: "id bought by Mt-Ray at the pri c of $405. MhRny d'd not p-<v tho money,' and the Sheriff was 'forced to pay it, and was allowed by the plaintiff’s attorney to k. vo the execution reno wed. Sehoff-•xior took the bid off’ M Ray’s band.!, paid the Sheriff, and took his deed in the usual form. It does not set forth as *15 .required by statute, that the title was held as security for the purchase money. Fohoflher took possession under the deed.
In 1859 a bill wa< tiled by Henry Fog Jem ¡m and Jus co-sureties, against John ¡S. Fogb'inan, alleging that said John having becosne insolvent, Henry had been torced to pay the purchase money, except $50 paid by John, praying that the mill and ten acres be sold for his indemnify. Un reference to the Clerk and Master, be reported that Henry had paid the sum of $877 94 as the surety of John: an order of sale was made, and "W ¡Ilium Hr.Ison became the purchaser nr $800, for which he gave Ids nov with a surety.
Heriy ITo&leiuan*also ii ul in respect to the nine aero tract, alleging tin t be had b--on fucod to p-y tl.opur-oi ase ¡annoy,to wt: iiie r.na a¡ ids ipuiíy te i’attorseu end Hu-wu, «,[• w./jpon it is m-lorc-1 thai, Olerl-aau .'..¡.c.e.1 e.veo.ito ..i.ie ... ..¡¡eai:, U;.ic.¡ tic U.u.
flu- pí'iiniil” Ceboíh:; r a¡ ser!.;an equity under the ¡Shcilirb deed, to pay oil the HuwinUiU'C'w, atic! have the hg<J tifio convoyo] to him in ret poet ;o íi.e dine aeao tract, lie-sub. miss to prv the and. ¡n-i ¡3 for a convoyan; < from I'al-te.Cason. Hi f- s-p- el to'the; fo n sou* Hf.et. mclcd-L He it ship ii at. li.g glenein docs í c-t eveccd. íi.e :-r/¡< oí gil? v, Feb he ste-ar'.c n;.t ; aid i-y Ucnrv Fo-to ases Juv a c.'u’, py. :;u ter.
Ir "í\j ú- h ..nd j.-ot aver t1::'*. iy>n>rt. i.jts <-r: g/i.und if";'. the i,non ”, en the 'Os i*/ i ? , 7> ■ ■ was not. sub- ;.:>!)• .\<"pd-v: n.H.H.g; b:..t they bid vv.is iifob, they oí-o red Lo release all el'.vi: i f.t í/m lathi, provided Ccludhier world j,ay tho amount which Henry Fogle man liad been obliged to pay as the. stUMy of John S^Foglemaii, which ho refused to do.
The interest of a purchaser of land sdd by a Clerk and Master, or other j erson, when the purchase money is not paid, and the title i,s retained as a security, is .considered *16 and treated as an “ equity of redemption tbe purchaser being in tact a mortgagee, in the .same way as if tbe vendor bad made title, and then taken a mortgage to secure the purchase money. Green vs. Crocket, 2 Dev. and Bat. Eq. 390.
The purchaser of an “ equity of redemption” at Sheriffs sale, has a right to call for the legal estate upon discharging such part of the mortgage debt as remains unpaid, by tbe provisions of the act of 18Í2. Rev. Code, ch. 45, section 546. , . , •
When the'defendant in the execution has a trustor other •equitable interest, which is not embraced by the act of 1812, ,a purchaser at Sheriffs sale does n >t acquire the equity of the debtor, but is substituted to his rights c< to the extent of holding it as a security for Jthc money-which he has paid." Taylor vs. Gooch, 4 Jones 431. I will remark for the purpose of correcting the error that the word “.creditor is put in the ‘ head note’ of that case, a id also in the'opini >u, as reported, in place of ‘ debtor.’ The mistake i, obvious from the context; for- it is the debt r who has the equity, to which the pui chaser gaccacls as a security for the money lie pays. The creditor has on y a ju Ig netti and execution to which the debtor's equity ¡ ¡ not liable, and he money paid >s considered as so much advanced for the debtor on the security of his equity.
The difference between buying at Sheriffs sale, an equity which is the subject of execution, and one that is not, is this: in the former cuse, the purchaser becomes the owner of the equity, and upon discharging the incumbrances is entitled to the legal estate, although it may greatly exceed in value the amount which he has paid : whereas in the latter case, 4he purchaser only succeeds to the equ ty of the debt r to the extent of holding it as a seeuñty for the money phid : in other words he becomes an incumbrancer merely * anil the debtor still Holds the equity, and upon discharging *17 the ineumbranee may call for the legal-estate, and he is the ■person entitled to any excess which there may be in the value of the land over the-incumbrances on it.
An “ equity of redemption” can not be sold under an execution for the mortgage debt, The reason is obvious : for the purchase money would be applied in payment of the' mortgage debt, and so the purchaser would get the legal estate, and in effect pay nothing for-the equity of redemption. which is*the very tiling he professed to buy, and the Sheriff undertook to sell. For illustration, suppose a iract ot land worth $2,000 to be under mortgage for f> 1,000. If the Sheriff sells the “equity of redemption” under an execution for some other debt, and it is bid off' at $1,000, the the purchaser on-paying the mortgage debt, gets the land at its supposed value of |2,000 ; but if the Sheriff was allowed to soil the £ equity df redemption’under an execution for the mortgage debt, the $L00o Lid for it would extinguish .the debt, and the purchaser could call for the legal esiftte without paying one cent more, and in fact get the land for $1,000, half its value, arid pay-nothing for the equity of redemption. Camp vs. Cox, 1 Dev. and Bat. 52.
The sureties for the original purchase' n.-uey have the ffri-t- equity to he indemnified, and their claim is preferred to that of a purchaser of the equity of redemption at Sheriff’s sale, or any subsequent incumbrancer who comes in by assignment or otherwise : and the'question of notice has no bearing in such cases, becaue neither party has the legal estate, and the right turns on-priority. Polk vs. Gallant, 2 Dev. and Bat. Eq. 395. Green vs. Crockett, Sup.
To apply these principles to our cr.se : 1st in respect to the mill and ten acres of land. The execution being for the mortgage debt, the ‘£ equity of redemption” yeas not subject to be sold under it: so McR&y aad his assignee SchoTner did not acquire the equity of redemption by the Sheriff’s ' *18 deed : and Scboffner’s equity was tliat of a sirbsequent in-cumbrancer, and John S Fogleman still held the equity of redemption, and the right .to have the land by discharging the incumbrances.
Sehoffner, in order to enforce his equity, ought at once to have paid such part of the original purchase money as remained unpaid, and then filed a bill to have the land sold for his indemnity.- Instead of doing so, he .enters into possession and rests contented with the Sheriff’s deed, until the sureties for the original'purcliase money file a bill, and the lend is resold for their indemnity. Shoffner then comes forward and asks to be relieved- from the effect of that deed, which was to purchase the mortgage, on the ground Unit he had not been made a party to the proceeding. We fhink ho is entitled to relief to that extent, and there will he a decree for a sale of tfio land, the price to ho brought, in and subject to further directions.
2d. In'respeet to the nine acres of land. The equity of redemption was subject to sale under the execution ; and if he had jwoceeded at once to pay off" the ¡t¡>ho mortgage money, he could have called for the legal title, hut for a difficulty which will he mentioned below. He hangs bach, however, until the surety, Henry Fogleman, assigns his equity to Patterson and Bason, and agleed is made to them hy the order of the court, whereby the mortgage is foreclosed. The difficulty alluded to is, that the nineteen acres were sold together; so there is no mode of ascertaining what he paid for the equity of redemption ; and to meet the justice of the case, there will ho a decree for the sale of this parcel also ; the two parcels to be sold together or so-pas ately, as the commissioner may deem best : the whole fund to he subject to further directions. There will bo a reference to ascertain the amount which has been, paid by Henry Fogleman or any of the other sureties. This amount, with interest,and the costs incurred in seeking indemnity *19 of which the Master will also report, will be first paid out of the fund. Then the amount paid by ShofFner on the execution, allowing' Mm interest and charging the rents and 'profits received by him. The residue, if any, will belong to John S. Fogleman or his assigns. The cleric will also report what amount was due on the note given by. John Fogleman for the price of the mill and ten acres at the time of the ¡Sheriff's sale, and how much lias been received by the Clerk and' Master on account of this debt. The court has had no little difficulty about it: for the Clerk and Master reported'when the bill was filed for a’resale, that Henry Fogleman, as surety, had paid $377'94, and it seems from the jdaintiff’s admissions that John S. Fogleman had paid $50, and the Sheriff says he paid to the attorney who had the note for collection $405 ; which greatly exceeds the price of both tracts of land, and needs explanation.
. let there he a decree for the sale of the land and an account, and the cause will be retained for further directione.